JERRY E. SMITH, Circuit Judge:
I.
Kenneth Ford is an orthopedic surgeon who has contracted with various health maintenance organizations (“HMO’s”) as a specialist. In May 1996, he sued the defendant HMO’s, claiming multiple causes of action stemming from their allegedly deceptive advertising. All of Ford’s claims were dismissed over a period of several years.
Ford now appeals two of the district court’s rulings: its 1999 decision to deny class certification to a proposed Lanham Act plaintiff class of all certified physicians who have contracted with the defendant HMO’s, and its 2001 summary judgment dismissing Ford’s individual Lanham Act false advertising claim on the ground that he lacks prudential standing.
Ford contends that the HMO’s have used false advertising that claims that their management techniques improve health care quality and that they allow patients and doctors to make their own treatment decisions. Ford argues that the defendants’ cost-control measures undercut quality and “ration” medical care— sometimes against the will of doctors and patients. Ford contends that the defendants’ cost-control policies reduce the incomes of doctors, including his own. He also claims that, by attracting new customers to the HMO’s’ health plans, the allegedly deceptive advertising further reduces doctors’ incomes because it increases the HMO’s’ market power over the price of medical services. We affirm the dismissal of Ford’s claims for lack of Article III standing.
II.
A.
The relevant portion of the Lanham Act provides for a cause of action as follows:
(a) Civil action
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person’s goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a) (1994). The district court held that Ford lacks prudential Lanham Act standing under this section. See Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 560-62 (5th Cir.) (outlining test for determining prudential Lanham Act standing), cert. denied, — U.S. -, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001). Although Article III constitutional stand *332 ing was not raised by the parties or considered by the district court, we must— where necessary — raise it sua sponte. SEC v. Forex Asset Mgmt., LLC, 242 F.3d 325, 328 (5th Cir.2001).[1]
Standing “is an essential and unchanging part of the case-or-controversy requirement of Article III.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
[The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an “injury in fact” — an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent not conjectural'or hypothetical ... Second, there must be a causal connection between the injury and the conduct complained of ... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.]
Id. at 560-61, 112 S.Ct. 2130 (quotations omitted).
“The party invoking federal jurisdiction” — Ford—bears the burden of proof in establishing all three elements. Id. at 561, 112 S.Ct. 2130. “Failure to establish any one [of them] deprives the federal courts of jurisdiction to hear the suit.” Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 (5th Cir.2002). At the summary judgment stage, “the plaintiff can no longer rest on ... mere allegations, but must set forth by affidavit or other evidence specific facts” validating his right to *333 standing. Lujan, 504 U.S. at 561, 112 S.Ct. 2130 (citations omitted). The question of Article III standing must be decided prior to the prudential standing and class certification issues raised in this appeal, “because it determines the court’s fundamental power even to hear the suit.”[2] Rivera, 283 F.3d at 319.[3] Ford cannot prove the causation necessary to establish Article III standing.
B.
Ford claims that his injury consists of a reduction in his income from his medical practice caused by the defendants’ restrictive cost-containment policies, which allegedly have the effect of reducing payments to contract specialists. He contends that the HMO’s have been able to lower their payments to contract physicians as a result of increased market power gained by attracting patients through deceptive advertising. This argument fails to satisfy the causation prong of standing.
To meet the causation requirement, Ford would have to present evidence affirmatively proving that the reduction in his income was a consequence of the HMO’s’ restrictive policies and that those policies in turn were established or at least made more onerous as a result of increased market power created by the acquisition of new customers through the defendants’ allegedly deceptive ads.[4] Nothing in the record establishes the validity of either of the two links in this causal chain, and Ford must provide evidence of both if he is to establish the causation necessary for Article III standing. Otherwise, he cannot show that his injury is “fairly traceable to the challenged action of the defendant.” Lujan, 504 U.S. at 560, 112 S.Ct. 2130 (quotations and ellipses omitted).
There is no evidence in the record to show that Ford’s income has in fact declined any more than would be expected as a result of events completely unrelated to the HMO’s’ activities. When asked by opposing counsel whether he “could identify a single patient you lost as a result of the defendants’ ads,” Ford admitted that he could not. There is also no evidence demonstrating that Ford ever received a lower payment for his services than he would have in the absence of the advertisements.
In its ruling denying Ford’s petition for class certification, the district court noted that, during the 1992-96 period, Ford’s income did indeed decline, but the income of all of his partners went up. Ford v. NYLCare Health Plans, Inc., 190 F.R.D. 422, 426 (S.D.Tex.1999). The district court also pointed out that some or all of the decrease in Ford’s income might have *334 been a result of the fact that “he is not employed full time as a physician ... and spends a significant period of time filming a fishing show for a sports network.” Id. Ford bears the burden of proving otherwise, and he has not met it.[5]
AFFIRMED.

. In his special concurrence, Judge Benavides contends that this case should be decided on the basis of Lanham Act prudential standing rather than Article III constitutional standing, because the parties did not have an opportunity to brief the latter. This issue ignores the fundamental point that wherever possible, Article III standing must be addressed before all other issues "because it determines the court’s fundamental power even to hear the suit.” Rivera, 283 F.3d at 319. In the absence of Article III standing, we have no right to opine on issues of prudential standing.
The Third Circuit has explicitly recognized that Lanham Act prudential standing cannot be addressed so long as Article III standing remains in doubt, because "[c]onstitutional standing is a threshold issue that we should address before examining issues of prudential standing.” Joint Stock Soc’y v. UDV N. Am., Inc., 266 F.3d 164, 175 (3d Cir.2001). Although the special concurrence attempts to distinguish Joint Stock on its facts, the Third Circuit did not rest its holding — that Article III standing should be addressed first — on the specifics of the case before it, but instead adopted this principle as a broad general rule. We see no reason to create a circuit split on this issue.
Even if we did have the authority to forego consideration of Article III standing, there would be no need to exercise it. As the special concurrence recognizes, "to the extent that identical issues have already been raised in the litigation, the threat of procedural prejudice is greatly diminished.” In this litigation, the issue of causation that is central to our holding on Article III standing was extensively contested as part of the ongoing dispute over Lanham Act prudential standing.
In any inquiry into Lanham Act prudential standing, the court must weigh "(1) the nature of the plaintiff’s alleged injury: Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the [Lanham Act]?; (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages.” Procter & Gamble, 242 F.3d at 562. Causation is undeniably relevant to at least the second, third, and fourth prongs of this test, and defendants have consistently argued that Ford lacked prudential standing in part because he failed to provide adequate evidence of causation.
Despite this repeated challenge, Ford has not provided evidence demonstrating that he has suffered even a small loss as a result of defendants' advertising. He therefore has failed to meet his burden to "set forth by affidavit or other evidence specific facts” validating his right to standing. Lujan, 504 U.S. at 561, 112 S.Ct. 2130 (citations omitted).

.As we noted in Rivera, "there is a limited exception for suits in which the class certification issues are” "logically antecedent to the existence of any Article III issues.” Rivera, 283 F.3d at 319 n. 6 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)); see also Ortiz v. Fibreboard Corp., 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (same). This exception does not apply here, however, for the same reason it was inapplicable in Rivera: "In the instant case, in contrast to Ortiz and Amchem, the standing question would exist whether [the plaintiff] filed h[is] claim alone or as part of a class; class certification did not create the jurisdictional issue.” Rivera, 283 F.3d at 319 n. 6.

. Cf. Joint Stock Soc'y, 266 F.3d at 175 (holding that Article III "constitutional standing” must be addressed before considering Lan-ham Act "prudential standing”).

. See Joint Stock Soc’y, 266 F.3d at 178 (holding that Article III standing for a Lanham Act false advertising claim is lacking where the plaintiff's injuries cannot be traced to the defendants’ challenged advertisements "but are rather the result of an independent cause”).

. See Johnson v. Bd. of Regents of the Univ. of Ga., 263 F.3d 1234, 1268 (11th Cir.2001) (holding that “a plaintiff cannot serve as a class representative if she lacks standing to advance the class’s claim”).