# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-30260

LAKESHA HUDSPETH, Individually, surviving spouse & as natural tutrix on behalf of Kenavion Hudspeth, on behalf of Kevon Hudspeth; LEAH MANNING, As natural tutrix on behalf of Keon Manning, on behalf of Larita Jones White, on behalf of  Dejairus White, on behalf of Jaamal Irving, on behalf of Shalawngela Neal

                    Plaintiffs - Appellants

JAAMAL IRVING; SHALAWNGELA NEAL; DEJAIRUS WHITE; LARITA JONES WHITE

                    Movants - Appellants

 v.

CITY OF SHREVEPORT; MICHAEL ARMSTRONG, Individually and as an employee of the City of Shreveport; DENVER RAMSEY, Individually and as an employee of the City of Shreveport; KEITH HIGHTOWER, Individually and as Mayor of the City of Shreveport; JAMES ROBERTS, Individually and as an employee of the City of Shreveport; TOM CODY, Individually and as an employee of the City of Shreveport; KENNETH ANTEE, Individually and as an employee of the City of Shreveport; STEVEN HAWTHORN, Individually and as an employee of the City of Shreveport

                    Defendants-Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:04-CV-587

No. 07-30260

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Lakesha Hudspeth and Leah Manning appeal the adverse summary judgment against their federal-law excessive-force and related state-law claims arising out of the fatal shooting of Marquise Hudspeth (Hudspeth) by Shreveport Police Officers. Primarily at issue is their challenge to qualified-immunity's being granted the Officers.

Jaamal Irving, Shalawngela Neal, Dejairus White, and Larita Jones White appeal their dismissal as plaintiffs. At issue is whether they, as Hudspeth's mother and siblings, have standing to pursue a claim, pursuant to § 1983, based on interference with their familial relationship with him.

The judgment is AFFIRMED.

I.

Although the details of the events leading up to the shooting are somewhat disputed, the central, relevant events are not. The incident was captured by the dashboard video cameras in Officers' patrol cars; the videotapes are in the summary-judgment record. Three Officers, after a high-speed, dangerous pursuit of Hudspeth for approximately five minutes, drove their three patrol cars into an open convenience store's well-lit parking lot and around Hudspeth's car, which he had stopped by the gas pumps. Hudspeth, as reported over the police radio, was suspected of running a red light, and, while driving, both being under the influence of alcohol and talking on a cell phone.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Hudspeth exited his vehicle, holding a small, silver cell phone, and walked away from the first Officer on the scene. He pointed his cell phone at another Officer – with two hands and arms outstretched, as if he was aiming a handgun. Hudspeth was approached from behind by the first Officer, who had his weapon drawn. Hudspeth tussled with the Officer, and as he pulled away from that Officer, the Officer in whose direction the cell phone was aimed fired two shots at Hudspeth. Hudspeth continued to walk away, toward the store's entrance. The two defendant Officers pursued him, with weapons drawn. Hudspeth turned rapidly toward one of the Officers, and pointed his cell phone at him in the same manner – with two hands and arms outstretched, as if he was aiming a handgun. That Officer crouched; both Officers fired their weapons, and Hudspeth, unarmed other than with the cell phone, was shot in the back and killed. The incident in the parking lot took approximately seven seconds.

Police Chief Roberts, after viewing the videos, stated: the Officers' actions were consistent with Shreveport Police Department policy. He also publicly stated: if he had been in their shoes, he would have reacted in the same manner.

This action presented federal and state-law claims based on asserted excessive-force being used against Hudspeth. Appellants are Lakesha Hudspeth, as surviving spouse of Hudspeth and on behalf of minors Kenavion and Kevon Hudspeth; Leah Manning, on behalf of minor Keon Manning; and Jaamal Irving, Shalawngela Neal, Dejairus White, and Larita Jones White, as Hudspeth's mother and siblings.

Partial summary judgment was granted. Dismissed were Hudspeth's mother and siblings and all defendants except the City, Officers Ramsey and Hawthorn, and Chief Roberts.

Subsequently, those four remaining Defendants were awarded summary judgment against all claims. The district court ruled, inter alia: (1) the two Officers were entitled to qualified immunity on the excessive-force claim; (2) Plaintiffs failed to state an excessive-force claim against either Chief Roberts or the City; and (3) the state-law tort claim failed as a matter of law. A Federal Rule of Civil Procedure 59 motion concerning the awarded qualified immunity was denied.

II.

The challenge by Hudspeth's mother and siblings to the lack-of-standing dismissal fails. For the other Appellants, summary judgment was proper.

A.

Hudspeth's mother and siblings claim standing. Because they are invoking federal jurisdiction, they bear the burden of establishing standing. Ford v. NYLCare Health Plans of Gulf Coast, Inc., 301 F.3d 329, 332 (5th Cir. 2002) (citation omitted). They have failed to produce any persuasive or convincing authority for recognizing that they have standing in this particular case. Therefore, no standing basis has been shown. Accordingly, their claims for loss of familial association were properly dismissed.

B.

A summary judgment is reviewed de novo, applying the same standard as did the district court. E.g., Wheeler v. BL Dev. Corp., 415 F.3d 399, 401 (5th Cir. 2005). Such judgment is proper if "there is no genuine issue of material fact and . . . movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "We resolve doubts in favor of the nonmoving party and make all reasonable inferences in favor of that party." Dean v. City of Shreveport, 438 F.3d 448, 454 (5th Cir. 2006). The court

must disregard all evidence favorable to movant that the jury is not required to believe, giving credence to the evidence favoring nonmovant that is uncontradicted and unimpeached, at least to the extent the evidence is from disinterested witnesses. E.g., Bazan v. Hidalgo County, 246 F.3d 481, 492 (5th Cir. 2001) (citation omitted).

No genuine issue of material fact exists, however, if, based on the summary-judgment evidence, no reasonable juror could find for nonmovant. E.g., Jenkins v. Methodist Hosps. of Dallas, Inc., 478 F.3d 255, 260 (5th Cir.), cert. denied, 128 S. Ct. 181 (2007). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham. . . . A fact is 'material' if it 'might affect the outcome of the suit under the governing law'." Bazan, 246 F.3d at 489 (emphasis and citations omitted).

Numerous claims were raised in district court. On appeal, however, only a few issues are presented to contest the summary judgment.

1.

Lakesha Hudspeth and Leah Manning (Appellants) challenge the adverse summary judgment on their excessive-force claims against Officers Ramsey and Hawthorn, the Police Chief, and the City. Primarily, they contend a genuine issue of material fact exists on the reasonableness of the Officers' actions.

a.

i.

As a threshold matter, they assert: whether the Officers acted reasonably depends necessarily on the credibility of their testimony; they are interested parties; and, therefore, that credibility cannot be determined at the summary-judgment stage. They rely on Bazan, 246 F.3d 481, which states: "The award of summary judgment to the defense in deadly force cases may be made only

with particular care where the officer defendant is the only witness left alive to testify". Id. at 492 (emphasis in original) (quoting Plakas v. Drinski, 19 F.3d 1143, 1147 (7th Cir. 1994)).

Bazan, however, does not control where the objective reasonableness of an officer's actions does not depend necessarily on the credibility of the witness' testimony. Id. at 493 ("We emphasize the narrow factual situation which this case addresses – one in which the sole surviving witness to the central events is the defendant himself, an interested witness." (emphasis in original)).

Here, there are at least two witnesses to the critical events, plus three videotapes. The videotapes provide indisputable evidence of what transpired.

ii.

Citing Simler v. Conner, 372 U.S. 221 (1963), Appellants contend, for the first time in their reply brief, that summary judgment was not appropriate because Officer Hawthorn's deposition conflicts with itself and his affidavit. "Arguments raised for the first time in a reply brief . . . are waived." United States v. Jackson, 426 F.3d 301, 304 n.2 (5th Cir. 2005). Nevertheless, whether this alleged conflict itself raises a genuine issue of material fact will be addressed, infra.

b.

Appellants maintain genuine issues of material fact exist concerning the reasonableness of the Officers' actions, preventing summary judgment based on qualified immunity. Such immunity shields police officers who reasonably, but mistakenly, violate a plaintiff's constitutional rights. E.g., Freeman v. Gore, 483 F.3d 404, 415 (5th Cir. 2007).

In other words, they are entitled to "immunity if a reasonable person in their position 'would have believed that [their] conduct conformed to the

constitutional standard in light of the information available to [them] and the clearly established law'". Id. (alteration in original) (citation omitted). "Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 380 (5th Cir. 2005) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

When asserting qualified immunity in a summary-judgment motion, movant meets his burden by pleading in good faith that he is entitled to such immunity. Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007). Qualified immunity being an affirmative defense, the burden shifts to nonmovant to rebut entitlement to it. Id. (citation omitted). Restated, Appellants have the burden to show a genuine issue of material fact exists on whether the Officers are entitled to qualified immunity.

To determine whether a defendant is entitled to summary judgment on the basis of qualified immunity, a more than well-established two-step analysis is employed. "First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights." Freeman, 483 F.3d at 410 (citations omitted). Only if a constitutional violation is found in step one may a court consider the below-described second step of the analysis. E.g., Saucier v. Katz, 533 U.S. 194, 200 (2001); Hathaway, 507 F.3d at 320 (citation omitted).

As the district court properly concluded, there was no constitutional violation. Accordingly, we need not reach the second step: whether the officers' conduct was objectively unreasonable in the light of clearly-established law at the time of the violation. E.g., Saucier, 533 U.S. at 200. (Of course, as discussed

infra, objective reasonableness is considered for an excessive-force claim in deciding the first step in qualified immunity analysis.)

For the first step, "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard". Graham v. Connor, 490 U.S. 386, 395 (1989). To state a violation of the Fourth Amendment's right to be free from excessive force, a plaintiff must show a seizure, plus: (1) an injury (2) resulting directly and only from the use of force that was excessive to the need; and (3) that force was objectively unreasonable. Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004) (citation omitted). In issue is only the third factor – whether the use of force was objectively unreasonable.

Needless to say, the objective reasonableness of the amount of force used turns on the facts and the circumstances for each incident. Brosseau v. Haugen, 543 U.S. 194, 201 (2004). The court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight". Graham, 490 U.S. at 396. Deadly force, a subset of excessive force, violates the Fourth Amendment unless "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others". Tennessee v. Garner, 471 U.S. 1, 11 (1985); Bazan, 246 F.3d at 487-88 (citations omitted).

> Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Garner, 471 U.S. at 11-12. Garner, however, is "cast at a high level of generality", because "'[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application'". Brosseau, 543 U.S. at 199 (quoting Graham, 490 U.S. at 396). Moreover, "reasonableness in these circumstances 'must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving'". Hathaway, 507 F.3d at 320-21 (quoting Graham, 490 U.S. at 396-97). As reflected in the videotapes, that is certainly the situation for the incident at hand.

At issue, then, is whether Hudspeth "posed a threat so serious as to justify a reasonable officer in [the defendant Officers'] position to respond with deadly force". See id. at 321. Of course, on summary judgment, the objective-reasonableness inquiry is a question of law; in other words, it cannot be decided if material fact issues exist. Bazan, 246 F.3d at 490 (citing Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997); Fed.R.Civ.P. 56(c)).

As discussed supra for deciding summary judgment, Appellants' (nonmovants') factual contentions are accepted as true. Nevertheless, in the light of the videotape evidence, the Officers' actions were objectively reasonable. That Hudspeth pointed a cell phone in the Officers' direction, resisted interaction with them, tussled with Officer Ramsey, turned suddenly toward the Officers, and attempted to flee is shown by the videotapes and undisputed. The Officers had an articulable basis to believe Hudspeth was armed and could reasonably have perceived him as posing a threat of serious bodily harm. See Garner, 471 U.S. at 20-21. Therefore, no genuine issue of material fact exists; and, as a matter of law, their actions were objectively reasonable.

Plaintiffs' contentions to the contrary are unavailing. That Hudspeth was unarmed is also irrelevant. See Reese v. Anderson, 926 F.2d 494, 501 (5th Cir. 1991). That Hudspeth had his back to the Officers at the instant deadly force was used is also irrelevant. See Brosseau, 543 U.S. at 196; see also Bazan, 246 F.3d at 493 (explaining the events leading up to the moment excessive force is used are relevant, as they "set the stage for what followed").

Moreover, as stated, the proper inquiry is an objective one. Devenpeck v. Alford, 543 U.S. 146, 153 (2004) ("'Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." (emphasis in original)) (quoting Whren v. United States, 517 U.S. 806, 814 (1996)). Despite Appellants' contentions, the alleged inconsistencies in Officer Hawthorn's testimony regarding why he fired at Hudspeth, or whether Hudspeth was aiming at Officer Hawthorn, or just pointing the cell phone in his general direction, for this reason, fail to create a genuine issue of material fact on the objective reasonableness of the Officers' actions. Along that line, also irrelevant are the Officers' subjective beliefs provided by testimony but not shown by the videotapes, namely whether any of the Officers truly thought: Hudspeth had a gun; their lives were in danger; or, Hudpseth was pointing the device (whether gun or cell phone) at an Officer.

Further, the fact that Officer Ramsey stated over the radio that Hudspeth appeared to be talking on a cell phone while driving does not make summary judgment inappropriate. Obviously, Hudpseth's doing so during the high-speed pursuit did not preclude his having a weapon on exiting his vehicle. In asserting this radio-transmission raises a material-fact issue, Appellants gloss over the fact that Hudspeth, after exiting his vehicle and being approached by the Officer,

pointed his cell phone, as most guns are held shortly before they are fired, at an Officer.

Appellants have not carried their burden to show the Officers acted objectively unreasonably. Accordingly, as the district court held, the Officers are entitled to qualified immunity.

2.

Appellants also contend their federal-law claims against the City and Police Chief were improperly dismissed, because the Chief ratified the Officers' conduct by publicly stating he would have taken the same action. They maintain a municipality can incur liability for an isolated instance of excessive force if an official policy maker subsequently ratifies the misconduct, relying on Grandstaff v. City of Borger, Texas, 767 F.2d 161, 171 (5th Cir. 1985) ("the subsequent acceptance of dangerous recklessness by the policymaker tends to prove his preexisting disposition and policy").

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." Id. (citations omitted).

> Grandstaff . . . does not stand for the broad proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy. Rather, Grandstaff affirmed a judgment against a Texas city on a highly peculiar set of facts . . . .

Coon v. Ledbetter, 780 F.2d 1158, 1161 (5th Cir. 1986).

As held supra, the Officers were entitled to qualified immunity. Therefore, summary judgment was proper for the City. Further, Appellants failed to present any contention, authority, or record references to support their assertion that summary judgment was improper for their claim against Chief Roberts. See Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

3.

Appellants next contend their excessive-force claim under Louisiana law was improperly dismissed, because a genuine issue of material fact exists on whether deadly force was necessary. To prevail on their claim under Louisiana Civil Code Article 2315, Plaintiffs must prove the Officers breached their duty of "reasonableness under the totality of the circumstances". Stroik v. Ponseti, 699 So. 2d 1072, 1077 (La. 1997).

As the district court recognized, this is essentially the same "objective reasonableness" standard used for a federal excessive-force claim. Reneau v. City of New Orleans, No. 03-1410, 2004 WL 1497711, at *4 (E.D. La. 2 July 2004) ("Under Louisiana law, the same standard is used in analyzing a state law claim of excessive force as a constitutional claim, namely reasonableness under the circumstances." (citations omitted)). For the reasons stated, the Officers' actions were reasonable under the objectively-viewed circumstances.

III.

For the foregoing reasons, the judgment is AFFIRMED.