# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2020

Lyle W. Cayce
Clerk

No. 18-50719

_____

MARY LOUISE SERAFINE,

      Plaintiff - Appellant

v.

KARIN CRUMP, In her Individual and Official Capacities as Presiding Judge
of the 250th Civil District Court of Travis County, Texas; DAVID PURYEAR,
In his Individual and Official Capacities as Justice of the Third Court of
Appeals at Austin, Texas; MELISSA GOODWIN, In her Individual and
Official Capacities as Justice of the Third Court of Appeals at Austin, Texas;
BOB PEMBERTON, In his Individual and Official Capacities as Justice of
the Third Court of Appeals at Austin, Texas,

      Defendants - Appellees

_____

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-1123

_____

Before OWEN, Chief Judge, and BARKSDALE and DUNCAN, Circuit Judges.

PER CURIAM:[*]

      For this action filed pursuant to 42 U.S.C. § 1983, Mary Louise Serafine,

a lawyer proceeding *pro se*, lacks standing to seek prospective declaratory and

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5th Cir.
R. 47.5.4.

No. 18-50719

injunctive relief against a judge and three justices who presided over state-court proceedings in which she was a party.  DISMISSED.

I.

Serafine first appeared before Appellee Travis County district-court Judge Crump in 2012, in her case which alleged her neighbors:  removed a chain-link fence separating her and their properties, and replaced it with a wooden one, which encroached upon her property; and trespassed upon, and damaged, her property in the course of digging a drainage system. *See Serafine v. Blunt*, No. 03–16–00131–CV, 2017 WL 2224528, at *1 (Tex. App. 19 May 2017).  After an appeal from the denial of a motion to dismiss various counterclaims, "Serafine's claims were tried to a jury in 2015, after which the jury unanimously decided against Serafine on every claim". *Id.*  Following trial, Judge Crump "determined the boundary line between the properties, granted [a defendant's] motion for sanctions, and rendered final judgment denying Serafine relief on all her claims". *Id.*

Serafine challenged the final judgment in the Texas Third Court of Appeals. *See id.*  Justices Goodwin, Pemberton, and Puryear, the other Appellees, affirmed the final judgment, but reversed and remanded for the limited purpose of the trial court's determining the amount, and then entering an award, of sanctions and attorney's fees to Serafine regarding defendants' dismissed counterclaims. *Id.* at *8.  The Texas Supreme Court denied Serafine's petition for discretionary review.

In this action, Serafine, proceeding *pro se*, filed her operative "First Amended Complaint" in December 2017, seeking prospective declaratory and injunctive relief against Appellees, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.  Serafine alleged they repeatedly violated, and will continue to violate, her rights by, *inter alia*:  knowingly creating false orders, judgments, and opinions; and acting in bad faith.  She requested the district court, *inter*

2

No. 18-50719

*alia*: "[i]ssue a declaratory judgment [stating Appellees'] policy, practice, and custom of denying and affirming denial of procedural due process . . . violate the Fourteenth Amendment of the U.S. Constitution"; and "[d]etermine that [Appellees'] judicial oath[s], as a matter of law, constitute[] a declaratory decree to which [they] consented, and that [their] violation of th[ose] oath[s] entitles [her] to injunctive relief". (Regarding Serafine's requested categorization of Appellees' judicial oaths as declaratory decrees, 42 U.S.C. § 1983 provides: "in any action brought [pursuant to that statute] against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable".)

Appellees moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) (requesting dismissal based, *inter alia*, on sovereign immunity and lack of standing) and 12(b)(6) (requesting dismissal for failure to state a claim). A magistrate judge's report and recommendation (R&R) recommended, *inter alia*, that the action be dismissed for lack of subject-matter jurisdiction. Adopting the R&R, the district court dismissed the action on that jurisdictional basis.

## II.

"We review *de novo* a district court's dismissal . . . for lack of subject matter jurisdiction." *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 349 (5th Cir. 2003) (citation omitted). Along that line, it goes without saying that we may *sua sponte* consider Article III standing, *e.g.*, *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citation omitted), and similarly may dismiss for lack of standing regardless of whether the district court addressed

3

that basis, *e.g.*, *Friends of St. Frances Xavier Cabrini Church v. FEMA*, 658 F.3d 460, 466 (5th Cir. 2011) (per curiam) (citation omitted).

It also goes without saying that, to establish Article III standing, a party must demonstrate a case or controversy. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471–76 (1982). To do so, a party must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" that "fairly can be traced to the challenged action and is likely to be redressed by a favorable decision". *Id.* at 472 (internal quotation marks and citations omitted).

"[T]he Supreme Court made clear [in *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03 (1983),] that plaintiffs may lack standing to seek prospective relief even though they have standing to sue for damages". *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc). In *Lyons*, the Supreme Court explained: "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects". *Lyons*, 461 U.S. at 102 (alteration and omission in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). (Although *Lyons* dealt with injunctive relief, this reasoning applies equally to declaratory relief. *See Herman*, 959 F.2d at 1285 (citations omitted).)

Along that line, our court has held: "To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future". *Id.* To have standing when "seeking injunctive or declaratory relief", plaintiff must allege: facts "from which it appears there is a substantial likelihood that he will suffer injury in the future", demonstrating "a substantial and continuing controversy between two adverse parties"; "facts from which the continuation of the dispute may be

reasonably inferred"; and the controversy is "real and immediate, . . . creat[ing] a definite, rather than speculative threat of future injury". *Bauer*, 341 F.3d at 358 (citations omitted).

Our court has addressed standing in the context of an action seeking prospective relief against a state-court judge on three occasions. *See id.* at 354; *Herman*, 959 F.2d at 1284; *Adams v. McIlhany*, 764 F.2d 294, 295 (5th Cir. 1985). Collectively, as discussed below, our decisions establish: a plaintiff's suing a state-court judge and seeking prospective declaratory or injunctive relief must show a significant likelihood she will encounter the same judge in the future, under similar circumstances, with a likelihood the same complained-of harm will recur.

In *Adams*, filed pursuant to 42 U.S.C. § 1983, the state-court judge had sentenced plaintiff to 30-days' imprisonment for contempt, after she questioned his integrity in a letter. *Adams*, 764 F.2d at 295. After affirming dismissal of plaintiff's claim for monetary damages on absolute-judicial-immunity grounds, *id.* at 297, our court addressed her claims for declaratory and injunctive relief, which the district court had dismissed for lack of standing, *id.* at 299. Because plaintiff had been released from jail, our court held the contempt citation and period of incarceration were insufficient to establish the requisite case or controversy. *Id.* Regarding declaratory relief, our court held: "The fact that it is most unlikely that [plaintiff] will again come into conflict with [the judge] in circumstances similar to the ones presented here, and with the same results, precludes a finding that there was sufficient immediacy and reality here to warrant an action for declaratory relief". *Id.* (internal quotation marks and citation omitted).

In *Herman*, also filed pursuant to 42 U.S.C. § 1983, plaintiffs, including Murray-O'Hair, requested declaratory and injunctive relief and damages from numerous defendants, including two state-court judges, after Murray-O'Hair

was held in contempt for refusing, as a prospective juror, to make an affirmation. *Herman*, 959 F.2d at 1284–85. Our court held she lacked standing to obtain prospective relief, reasoning: she "suffer[ed] no continuing harm"; she could not "show a real and immediate threat that she will again appear before [the judge] as a prospective juror and that [the judge] will again exclude her from jury service and jail her for contempt"; and "[t]here are over half a million residents in Travis [C]ounty[, Texas,] and twenty trial judges[, making] [t]he chance that [she] will be selected again for jury service and that [the judge] will be assigned again to oversee her selection as a juror . . . slim". *Id.* at 1285. Finally, our court noted: "Even if [she] were likely to appear before [the judge] in the future, there is little indication that they would interact in the same fashion." *Id.* at 1285–86.

In *Bauer*, plaintiff's action against a state probate judge, filed pursuant to 42 U.S.C. § 1983, sought a declaratory judgment that a statute related to guardianship was unconstitutional. *Bauer*, 341 F.3d at 354. Our court held plaintiff lacked standing because "there d[id] not exist a 'substantial likelihood' and a 'real and immediate' threat that [plaintiff] w[ould] face injury from [defendant] in the future". *Id.* at 358. Citing *Adams* and *Herman*, our court stated it had "often held that plaintiffs lack standing to seek prospective relief against judges where the likelihood of future encounters is speculative". *Id.* (citations omitted).

Again, taken together, these decisions establish that, to have standing to seek prospective declaratory or injunctive relief against a state-court judge, plaintiff must demonstrate a substantial likelihood she will encounter the same judge, in sufficiently similar circumstances, and with sufficiently similar results to establish an immediate, rather than speculative, threat of repeated injury. *See Bauer*, 341 F.3d at 358; *Herman*, 959 F.2d at 1285–86; *Adams*, 764 F.2d at 299.

No. 18-50719

In her operative complaint, Serafine claims Appellees violated her Fourteenth Amendment rights by, *inter alia*: "knowingly creating orders, judgments, and opinions that made materially false statements of dispositive facts"; creating judicial documents that made statements in bad faith; repeatedly denying or affirming denial of her rights to notice, hearings, an opportunity to defend, and to appeal; ignoring motions; tampering with court records; and allowing incorporation of perjury. She alleges Appellees "appear[] to have acted in concert", or that Appellee Judge Crump knew she was "protected by" the Appellee Justices. In addition, Serafine alleges these actions are "part of a pattern complained of locally by other lawyers". Finally, she alleges: "unless deterred[, Appellees] will continue to violate[] [her] rights under the Fourteenth Amendment"; "[b]ecause the wrongful acts of [Appellees] were repeated and egregious, they demonstrate the necessity for . . . prospective relief"; "[her] underlying civil matters can be expected to continue in both courts"; and "[she] as a local attorney will appear in [Appellees'] courts in additional matters".

Although Serafine alleges many and varied violations, her allegations do not establish Article III standing. Regarding her seeking prospective declaratory and injunctive relief based on potential future litigation, two Appellees (Justices Pemberton and Puryear) no longer serve as judges. Moreover, this makes impossible Serafine's again appearing before the panel (consisting of the three appellee justices) against which she levels charges in her operative complaint. As for Appellee Justice Goodwin, appellate panels are rotated, minimizing the chance Serafine will appear before her; and, similarly, because there are multiple trial judges in Travis County, Texas, there is little chance she will appear, again, as a similarly situated party before Judge Crump. *See Herman*, 959 F.2d at 1285–86; *see also* Tex. Gov't Code § 22.222(b). Taken together, these factors demonstrate there is not a

7

No. 18-50719

substantial likelihood Serafine "will again come into conflict with [Appellees] in circumstances similar to the ones presented here, and with the same results". *See Adams*, 764 F.2d at 299.

Concerning the 2017 state-court remand, the record does not clarify the current state of the case. But even if it has not been resolved, the remand was solely for the purpose of awarding Serafine sanctions and attorney's fees. *Serafine v. Blunt*, No. 03–16–00131–CV, 2017 WL 2224528, at *8 (Tex. App. 19 May 2017). This does not provide an opportunity to treat Serafine as she alleges Appellees previously did. The remaining justice in service, Justice Goodwin, of course, will not be involved with this state district-court matter. And, even in the unlikely event Judge Crump remains assigned to the matter following Serafine's suing her, there is no reasonable basis on which to assume Serafine will be subject to the sort of alleged conduct about which she complains. As such, Serafine has not established for the remand that she suffers a continuing harm or a substantial likelihood of a real and immediate threat of future injury by Appellees. *See Herman*, 959 F.2d at 1285–86.

## III.

For the foregoing reasons, the appeal is DISMISSED.

8